# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-994V
### (Not to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *

NICHOLAS ZUMWALT,
*on behalf of his minor child, L.Z.*,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

* * * * * * * * * * * * * * * * * * * * * * * * *

Special Master Corcoran

Dated: November 27, 2018

Attorney's Fees and Costs;
Interim Fees; Expert Flat Rates.

*Andrew D. Downing*, Van Cott & Talamante, Phoenix, AZ, for Petitioner.

*Ryan D. Pyles*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]**

On August 12, 2016, Nicholas Zumwalt filed a petition on behalf of his minor child, L.Z., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that the series of vaccinations he received on March 24, 2014, caused him to experience an encephalopathy and intractable epilepsy. Pet. at 1–2, filed as ECF No. 1. An entitlement hearing took place on October 9, 2018, in Washington, DC.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioner has now requested an interim award of attorney's fees and costs in the total amount of $168,850.30 (representing $94,931.50 in attorney's fees, plus $73,918.80 in costs). Mot. Interim Attorney's Fees & Costs at 5–6, dated Nov. 5, 2018, filed as ECF No. 54 ("Interim Fees App.").

Respondent filed a Response to Petitioner's Motion on November 16, 2018, deferring to my discretion as to whether Petitioner has met the legal standards for an interim fees and costs award. Response at 2, filed as ECF No. 58. Respondent otherwise represents that the statutory and other legal requirements for an award of attorneys' fees and costs are met, and recommends that if an interim award is appropriate, I calculate a reasonable award. *Id*. at 2–3.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding at this time interim fees in the amount of $91,738.75, and costs in the amount of $57,644.95, for a total of **$149,383.70**.

**Procedural History**

This action has been underway for over two years. *See* Pet. at 1. Petitioner's attorney, Andrew Downing, began working on the matter on October 27, 2015, more than nine months before the case was filed. Interim Fees App. Ex. A at 1. In the months following the initiation of formal proceedings on August 12, 2016, Petitioner filed extensive medical records. *See, e.g.*, Ex. 3, filed Aug. 23, 2016, ECF No. 5-3; Ex. 23, filed Dec. 7, 2016, ECF No. 14. Respondent then submitted his Rule 4(c) Report on February 15, 2017. ECF No. 18.

Petitioner filed a letter from L.Z.'s treating pediatric neurologist, Dr. David Siegler, on May 5, 2017 (Ex. 24, ECF No. 20-1), then an initial expert report from Dr. Lawrence Steinman on July 18, 2017. Ex. 26, ECF No. 24-1. The parties filed prehearing submissions over the course of the summer of 2018 (ECF Nos. 42, 44, 46–48); and as previously noted, an entitlement hearing took place on October 9, 2018.

In his request for an interim fees award, Petitioner specifically requests that Andrew Downing be compensated at a rate of $350.00 per hour for work performed in 2015–16, $375.00 per hour for work performed in 2017, and $385.00 per hour for work in 2018. Interim Fees App. Ex. A. at 66. He also requests that attorney Courtney Van Cott receive $195.00 per hour for her work performed from 2017, and $205.00 per hour for work in 2018. *Id.* For the work of two paralegals, Danielle Avery and Robert Cain, Petitioner requests compensation at a rate of $100.00 per hour for work performed from 2015–16 and $135.00 per hour for work performed in 2017–18. *Id.* Petitioner states that the requested hourly rates have previously been found to be reasonable by other special masters. Interim Fees App. at 4. Petitioner additionally requests $73,299.79 in attorney's costs (for obtaining medical records, expert fees, hearing-related travel and lodging

expenses, and other miscellaneous costs), as well as $619.01 in costs borne by Petitioner himself. *Id.* at 5–6. Of that figure, $60,509.86 reflects expert costs incurred for the services of Drs. Steinman ($24,384.52) and Siegler ($36,125.34), including their hearing-related travel and lodging. Interim Fees App. Ex. A at 64–65.

## ANALYSIS

### I.      Legal Standard for Awarding Interim Fees and Costs

I have previously discussed at length the standards applicable to determining whether to award interim fees and costs. *See, e.g.*, *Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at *6–9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5–9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is well-established that a decision on entitlement is not required before interim fees and costs may be awarded. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). While there is no presumption of entitlement to an interim award of fees and costs, special masters may in their discretion make such awards, and often do so. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira*, 27 Fed. Cl. at 34; *Fester*, 2013 WL 5367670, at *16.

I find that Petitioner has made a showing sufficient to justify an interim award of fees and costs. Criteria that I have found to be important in determining whether an interim fees request should be permitted include: 1) if the amount of fees requested exceeds $30,000.00, and 2) if the case has been pending for more than eighteen months. *See Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017). This matter meets these criteria: it has been pending for over two years, and the total amount of attorney's fees requested exceeds the minimum threshold that I find to be appropriate.

### II.     Appropriate Fees Award

I must now determine the magnitude of Petitioner's interim attorney's fee award. Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). Special masters may, in their discretion, reduce attorney hours *sua sponte* without providing a petitioner notice and the opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (2009); *Perreira*, 27 Fed. Cl. at 34 (noting that special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-step process. First, the special master uses the lodestar method ("multiplying the number of hours reasonably expended[3] on the litigation times a reasonable hourly rate") to calculate a base award. *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the special master may adjust this amount as he sees fit based on certain relevant factors. *Id*. at 1348. This standard for calculating a fee award applies in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

Petitioner asks that the attorneys and paralegals who worked on this matter be reimbursed at varying rates for work performed from 2015–18, as detailed above. The attorneys practicing at Van Cott & Talamante, located in Phoenix, Arizona, have repeatedly been found to be "in-forum" and therefore entitled to the forum rates established in *McCulloch v. Secretary of Health & Human Services*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) and subsequently embraced by the Office of Special Masters.[4] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *7 (Fed. Cl. Spec. Mstr. May 26, 2016) (citing additional cases in which I awarded in-forum rates to Mr. Downing and associates). In addition, other special masters (in reasoned and persuasive decisions) previously awarded the specific rates requested herein for 2015–17 to Mr. Downing, his associates, and his paralegals. *See Brannigan v. Sec'y of Health & Human Servs.*, No. 14-675V, 2017 WL 2644696 (Fed. Cl. Spec. Mstr. May 26, 2017); *Bales v. Sec'y of Health & Human Servs.*, No. 15-882V, 2017 WL 2243094 (Fed. Cl. Spec. Mstr. Apr. 26, 2017); *Holt v. Sec'y of Health & Human Servs.*, No. 05-136V, 2017 WL 4325452 (Fed. Cl. Spec. Mstr. Sept. 1, 2017). The requested rates for 2018 are similarly reasonable and fall within the *McCulloch* in-forum ranges. Accordingly, the requested rates will be awarded.

---

[3] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for review denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205–06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349, (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). The *Davis County* exception is inapplicable here, however, because I have previously found that Van Cott & Talamante attorneys should receive forum rates.

[4] The hourly rate ranges for in-forum attorneys are set forth on the Vaccine Claims section of the United States Court of Federal Claims website. The rate schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Attorneys' Forum Hourly Rate Fee Schedules").

In addition, the majority of the hours expended on this matter (431 hours in total) appear to be reasonable for a case that has lasted over two years and required an entitlement hearing. This case has also proceeded in an expedited fashion, and Petitioner's attorneys efficiently used their time to collect the necessary medical records and prepare briefings in this case.

However, two categories of billing appear to be excessive. First, Mr. Downing and Ms. Van Cott over-billed for time spent in transit. Special masters regularly compensate time spent traveling (and not otherwise working on the matter at hand) at one-half an attorney's hourly rate. *See, e.g.*, *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805, at *12–13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). Mr. Downing and Ms. Van Cott, however, both billed their full hourly rates for time spent traveling from Washington, DC, to Phoenix, Arizona, after the October 9, 2018 entitlement hearing. Interim Fees App. Ex. A at 12, 55. Neither provided evidence that this travel time was spent working on this case. Accordingly, I will reduce the fees awarded by fifty percent for those hours of travel—reductions of **$1,443.75** and **$820.00**, respectively.

Second, I find many of Ms. Avery's paralegal time entries to be excessively long in light of the tasks they entailed. Most notably, tasks that could reasonably be completed in less than 0.1 hours are consistently billed as 0.2 hours of work. *See, e.g.*, Interim Fees App. Ex. A at 32 ("8/18/2016: Receive, review, and process Notice of Appearance filed by Ryan Pyles on behalf of Respondent—0.20 hours"), 36 ("12/12/2016: Receive and review Court's Scheduling Order; note new due date for filing of a Joint Statement of Completion or Status Report—0.20 hours"), 39 ("8/4/2017: Receive and review Court's Minute Entry following Status Conference held—0.10 hours; Receive and review Court's Scheduling Order; note deadline for Respondent to file an Expert Report—0.20 hours"), 48 ("7/26/2018: Receive, review and process Respondent's Motion for Extension of Time—0.20 hours; Receive and review Court's Order granting Respondent's Motion for Extension of Time; note new brief deadlines for Respondent and Petitioner—0.20 hours"). In total, I find that 20 of Ms. Avery's time log entries for 2016 should be reduced by 0.1 hours each; that 34 of her 2017 entries should be reduced by 0.1 hours each; and that 20 of her 2018 entries should be reduced by 0.1 hours each. This results in an overall reduction of **$929.00**.

In all other respects, I find the requested attorney's and paralegal fees to be reasonable in light of the work performed. I will therefore award **$91,738.75** in fees, a reduction of **$3,192.75**.

III. **Requested Costs**

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are *reasonable*. *Presault*, 52 Fed. Cl. at 670; *Perreira*, 27 Fed. Cl. at 34. When petitioners fail to carry their burden, such as by not providing

5

appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

The requested costs herein fall into three general categories: office and filing-related costs; expert costs; and travel costs. The first category includes charges for photocopies, postage, faxes, obtaining medical records, Westlaw legal research, and the filing fee in this matter. I find all of these charges to be reasonable and will make no reductions to the award for these costs. However, I will make adjustments to costs pertaining to experts and travel, as set forth below.

**A. Expert Costs**

*Dr. Steinman*

Petitioner requests reimbursement of $24,384.52 in relation to Dr. Steinman. This includes flights from San Francisco, California, to Washington, D.C. for the hearing ($1,596.40); a two-night stay at the Sofitel Hotel in Washington, D.C. ($1,038.12); and $21,750.00 for 43.5 hours of work at a rate of $500 per hour. Interim Fees App. Ex. A at 127–31.

Dr. Steinman has previously been awarded $500 per hour for his work in the Vaccine Program (*see, e.g.*, *Allen v. Sec'y of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796 (Fed. Cl. Spec. Mstr. Aug. 23, 2013)), and the time he spent working on this case appears reasonable in light of its complexity. And while I note that his flight and hotel costs are on the high end of what has been deemed appropriate in other costs awards, I do not find them to be exorbitant. Accordingly, I will award the full $24,384.52 requested for Dr. Steinman's services and travel.

*Dr. Siegler*

Petitioner requests a far higher sum for Dr. Siegler: $36,125.34. This figure represents $13,500.00 for 30 hours of work in 2017 (at a rate of $450 per hour); $3,000.00 for 6 hours of work in 2018 (at a rate of $500 per hour); round-trip airfare from Tulsa, Oklahoma to Washington, DC, for the October 9, 2018 hearing ($458.60); two nights of lodging at the Marriott Hotel in Washington, DC ($750.62); an additional unsubstantiated charge for "lodging" in the amount of $416.12; and $18,000.00 for the three days Dr. Siegler spent traveling to and attending the hearing in this matter at a "day rate" of $6,000.00 per day. Interim Fees App. Ex. A at 64, 89, 123–26.

I find Dr. Siegler's airfare to be reasonable, as well as his charge for lodging at the Marriot Hotel. However, without further explanation or substantiation, I cannot reimburse the unexplained charge for "Lodging (Dr. Siegler)" of $416.12 listed in the index of cost reimbursement requests. *See* Interim Fees App. Ex. A at 64. Accordingly, I will reduce that element of the requested cost

6

award (a reduction of **$416.12**).

With regard to Dr. Siegler's charges for his time spent working on this matter, I find that the expenditure of 30 hours in 2017 and 6 hours in 2018 is reasonable in consideration of this case's complexity. The rates charged for that work, however, are excessive in light of his role in this matter. Dr. Siegler billed Petitioner at a rate of $450.00 per hour for work performed in 2017 and $500.00 per hour in 2018. These rates fall at the top of the range awarded to experts in Vaccine Program cases, and Petitioner has failed to establish that Dr. Siegler is entitled to such a high rate. In addition, while I found Dr. Siegler's input useful to my resolution of the case, his role as one of L.Z.'s treaters (with direct fact knowledge of the matter, akin to any fact witness) renders his participation in this case a bit different from an expert retained solely to opine on an outside matter, like Dr. Steinman. He should receive some fee for taking the time to testify—but that fee should also take into account that his testimony did not require the kind of labor that an expert solely offering a third-party opinion would have to perform (including review of an unfamiliar patient's records or literature pertaining to the injury in question).

In light of the above, I find that an hourly rate of $400.00 for Dr. Siegler is more appropriate for both 2017 and 2018. Dr. Siegler will accordingly be compensated $14,400.00 for his 36 hours of pre-hearing work, resulting in a reduction of **$2,100.00**.

Additionally, I find Dr. Siegler's charges of $6,000.00 per day for travel to and from the hearing and attending the hearing to be grossly excessive. Other special masters have concluded that experts should not be awarded flat rates, particularly for days spent in hearings that end before the close of business. *Bean-Sasser v. Sec'y of Health & Human Servs.*, No. 13-326V, 2017 WL 4385749, at *6 (Fed. Cl. Spec. Mstr. Sept. 8, 2017) (declining to award an expert a flat rate when the hearing in question ended at 3:00 p.m.); *Culligan v. Sec'y of Health & Human Servs.*, No. 14-318V, 2016 WL 1622967, at *10 (Fed. Cl. Spec. Mstr. Mar. 31, 2016); *Jeffries v. Sec'y of Health & Human Servs.*, No. 99-670V, 2006 WL 3903710, at *18 (Fed. Cl. Spec. Mstr. Dec. 15, 2006). As reflected in Dr. Steinman's more detailed bill (*see* Interim Fees App. Ex. A at 127), Petitioner's one-day hearing lasted from 8:30 a.m. until approximately 3:30 p.m.—a duration of seven hours, which included a break for lunch. This is also confirmed by the trial transcript. *See* Tr. at 215 (noting hearing start time of 8:56 a.m. and end time of 3:36 p.m.). Compensating Dr. Siegler $6,000.00 for his time spent in the seven-hour hearing would equate to an hourly rate of $857.14. His time will instead be compensated for seven hours of work at a rate of $400.00 per hour for a total of $2,800.00. This equates to a reduction of **$3,200.00** from Petitioner's requested costs.

Additionally, it would be unreasonable to award Dr. Siegler his requested $6,000.00 per day for the time he spent traveling to and from this hearing. As noted above, flat rates are frowned upon in Vaccine Program cost awards, particularly for activities that do not require a full day's work. *Cf. Bean-Sasser*, 2017 WL 4385749, at *6. In addition, expert travel time is compensated at

one-half the expert's standard hourly rate absent a showing that they spent their travel time working on the matter in question. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Dr. Siegler's travel itinerary reveals that his actual travel time was 4.58 hours on October 8 and 4.75 hours on October 10, and he does not assert that he spent this travel time otherwise working on this case. Interim Fees App. Ex. A at 124. Discounting his rate of $400.00 per hour by fifty percent and compensating only his hours actually spent in transit, Petitioner will be reimbursed $1,866.00 for Dr. Siegler's two days of travel. This results in a reduction of **$10,134.00**.

### B. Travel Costs

Several of Petitioner's travel-related cost requests are also unreasonably high. While I find all lodging requests for Petitioner, his attorneys, and his experts to be reasonable, I will reduce improper flight costs, as well as duplicative and excessive meal costs.

*Flights*

Petitioner's requested reimbursement for Ms. Van Cott's airfare will be reduced due to a calculation error. Petitioner requests compensation for one-half of Ms. Van Cott's round trip airfare between Phoenix and Washington, DC, as Ms. Van Cott split her time in Washington, DC between hearings in two cases. *See* Interim Fees App. Ex. A at 107–08. Her total flight cost was $633.40, half of which is $316.70. *See id.* Petitioner requests $346.85 for this travel without explaining the difference of $30.15. Without substantiation, I cannot award the additional amount, so Petitioner's cost award will be reduced by **$30.15**.

Additionally, Mr. Downing requests $16.00 for in-flight Wifi on Mr. Downing's return flight. Interim Fees App. Ex. A at 64, 117. As Petitioner has not demonstrated that Mr. Downing spent his flight time working on this case, I do not find that it would be reasonable to reimburse this cost. Petitioner's cost award is thus reduced by **$16.00**.

*Meals*

Petitioner requests a total of $881.78 for meal expenses during hearing-related travel. Several of the receipts submitted in support of this request reveal excessive or duplicative costs. First, for October 8, 2018, Petitioner requests reimbursement of $78.80 for "Meals (ADD & CVC)" as well as $63.80 for "Meals (ADD & Team)." Interim Fees App. Ex. A at 64. However, the corresponding receipts for these two distinct line items reveal that this Petitioner has submitted two receipts for the same meal, one before tip and one after tip. *Id.* at 115, 119 (pre-tip itemized receipt totaling $63.80 on 119; non-itemized receipt for $63.80 plus $15.00 tip totaling $78.80 on 115). To avoid duplicative billing, the pre-tip entry will be struck, and the overall costs award

accordingly reduced by **$63.80**.

The itemized receipt for the above-mentioned October 8, 2018 lunch also reveals that Petitioner seeks reimbursement for a "black and tan."[5] The Vaccine Program does not reimburse for alcohol. *Bhuiyan v. Sec'y of Health & Human Servs.*, No. 05-1269V, 2015 WL 2174208, at *8 (Fed. Cl. Apr. 16, 2015). Accordingly, compensation for this meal will be reduced by the price of the drink, **$7.50**.

Finally, I find Petitioner's request for reimbursement of an October 8, 2018 meal totaling $476.28 to be unreasonably high. The receipt for this meal is not itemized. Interim Fees App. Ex. A at 119. It is thus impossible to determine whether Petitioner improperly seeks reimbursement for alcohol. Otherwise, the requested sum is exorbitant, even for a meal in the admittedly expensive Washington, DC area. Other special masters have looked to federal per diem rates to determine reasonable meal costs. *E.g.*, *Dayton v. Sec'y of Health & Human Servs.*, No. 15-0589V, 2016 WL 8377512, at *2 (Fed. Cl. Spec. Mstr. Nov. 17, 2016). Petitioner lists this as a meal for "ADD & Team," and the receipt reflects a payment time of 10:01 p.m. Interim Fees App Ex. A at 64, 119. Accordingly, I will assume that this constituted dinner for Petitioner, his two attorneys, and his two experts. Applying the applicable per diem dinner rate of $34.00 per person,[6] I will reimburse $170.00 for this dinner, resulting in a reduction of **$306.28**.

Taking all the aforementioned reductions into account, I will award a total of **$57,644.95** in costs, a reduction of **$16,273.85**.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Interim Attorney's Fees, as follows:

|  | **Amount Requested** | **Reduction** | **Total Awarded** |
|---|---|---|---|
| **Attorney's Fees** | $94,931.50 | $3,192.75 | $91,738.75 |
| **Litigation Costs** | $73,918.80 | $16,273.85 | $57,644.95 |
|  |  | **Grand Total:** | **$149,383.70** |

I therefore award a total of **$149,383.70** in interim fees and costs as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Mr. Andrew Downing, Esq.,

---

[5] A black and tan consists of a Guinness stout poured atop a lager. "Black & Tan," *Difford's Guide for Discerning Drinkers*, https://www.diffordsguide.com/cocktails/recipe/222/black-and-tan.

[6] Per diem rates for the Washington, DC area for Fiscal Year 2019 are available at https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=&fiscal_year=2019&zip=20005&city=.

representing attorney's fees in the amount of $91,738.75, plus costs in the amount of $57,644.95.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran  
Brian H. Corcoran  
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.